NO. 25-7474

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN MICHAEL KEALOHA,

Defendant-Appellant.

APPEAL OF DENIAL OF MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND
THE FIRST STEP ACT OF 2018
FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA, LAS VEGAS DIVISION
CRIM. NO. 2:21-cr-00259-APG-VCF-1

## OPENING BRIEF FOR DEFENDANT-APPELLANT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAN 16 2026

FILED
DOCKETED_____ DATE _____ INITIAL

KEVIN MICHAEL KEALOHA
REG. NO. 94532-022
FCI HERLONG
FEDERAL CORR. INSTITUTION
P.O. BOX 800
HERLONG, CA 96113
Appearing *Pro Se*

NO. 25-7474

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN MICHAEL KEALOHA,

Defendant-Appellant.

APPEAL OF DENIAL OF MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND
THE FIRST STEP ACT OF 2018
FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA, LAS VEGAS DIVISION
CRIM. NO. 2:21-cr-00259-APG-VCF-1

OPENING BRIEF FOR DEFENDANT-APPELLANT

KEVIN MICHAEL KEALOHA
REG. NO. 94532-022
FCI HERLONG
FEDERAL CORR. INSTITUTION
P.O. BOX 800
HERLONG, CA 96113
Appearing *Pro Se*

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING KEALOHA'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018 . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

Cases     Page

*United States v. Bartlett*, 567 F.3d 901, 908–09 (7th Cir. 2009) . . . . . . . . . . . . . . 10

*Estelle v. Gamble*, 429 U.S. 97 (1976)(same) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Haines v. Kerner*, 404 U.S. 519 (1972)(same) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009) . . . . . . . . . . . . . . . 10

*United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) . . . . . . . . . . . . . . . . 5, 7, 11

*United States v. Bean*, 371 F. Supp. 3d 46, 52–53 (D.N.H. 2019) . . . . . . . . . . . . .

*United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) . . . . . . . . . . . . . . . 9

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . 11

*United States v. Brooks*, Case No. 07-cr-20047-JES-DGB
(C.D.Ill. May. 15, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) . . . . . . . . . . . . . . . . . 7

*United States v. Clark*, Case No. 11-CR-30-2-JPS
(E.D. Wis. Jul. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) . . . . . . . . . . . . . 9

*United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) . . . . . . . . . . . . . . 10

*United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) . . . . . . . . . . . . 8

*United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) . . . . . . . . . . . . . 10

*United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) .................. 9

*United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ................. 10

*United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) .......... 10

*United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ............... 10

*United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ................ 10

*United States v. Riley*, No. 19-cr-152, 2020 WL 6368711
(S.D.N.Y. Oct. 29, 2020) .................................................. 8

*United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) ......... 9

*United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) ................. 5

*United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ........... 10

Statutes, Rules and Guidelines

18 U.S.C. § 924(a)(2) ..................................................... 1

18 U.S.C. § 924(c)(1)(A)(ii) .............................................. 1

18 U.S.C. § 924(c)(1)(A)(iii) ............................................. 1

18 U.S.C. § 924(d)(1) ..................................................... 1

18 U.S.C. § 924(d)(2)(C) .................................................. 1

18 U.S.C. § 924(d)(3)(A) .................................................. 1

18 U.S.C. § 2119(1) ....................................................... 1

18 U.S.C. § 3553(a) .................................................... 6, 11

18 U.S.C. § 3582(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1, 5, 7, 11, 12

18 U.S.C. § 3582(c)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3582(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21 U.S.C. § 994(u) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2461(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 1B1.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S.S.G. § 1B1.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 3E1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. App. P. 32 (a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed. R. Crim. 11(c)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATEMENT OF JURISDICTION

This appeal is from the September 26, 2025 Order by the district court (Chief Judge Andrew P. Gordon) denying Kealoha's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 ("Motion for Compassionate Release"). See Doc. 51.[1] A Notice of Appeal was filed on November 24, 2025, thereby vesting jurisdiction in this Court pursuant to 28 U.S.C. § 1291. See Doc. 53.

## STATEMENT OF THE ISSUE

Whether the District Court Abused its Discretion in Denying Kealoha's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018.

## STATEMENT OF THE CASE

### A.    Procedural Background

On September 28, 2021, a grand jury sitting in the United States District Court for the District of Nevada, Las Vegas Division, returned a thirteen (13) count Indictment charging Kealoha. See Doc. 1. Counts 1, 3, 5, 9, and 11 charged Kealoha with Carjacking, in violation of 18 U.S.C. § 2119(1). *Id.* Counts 2, 4, 6, 7, 10, and 12 charged Kealoha with Brandishing A Firearm During and In Relation to A Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *Id.* Count 8 charged Kealoha with Discharging A Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). *Id.* Count 13 charged Kealoha with Felon in Possession of A Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* The Indictment also contained Forfeiture Allegations, pursuant to 18 U.S.C. §§ 924(d)(1), (2)(C), and (3)(A) with 28 U.S.C. § 2461(c). *Id.*

---

[1] "Doc." refers to the Docket Report in the United States District Court for the District of Nevada, Las Vegas Division in Criminal No. 2:21-cr-00259-APG-VCF-1, which is immediately followed by the Docket Entry Number.

1

On November 29, 2022, a Change of Plea Hearing was held and Kealoha pleaded guilty as to Counts 1, 3, 5, 7, 9, and 11 of the Indictment, pursuant to a Written Plea Agreement. See Docs. 35, 36.

On March 23, 2023, Kealoha was sentenced to a total term of 180 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $800. See Docs. 42, 43, 45.

On August 5, 2025, Kealoha filed a Motion for Compassionate Release, which was denied on September 26, 2025. See Docs. 47, 51.

B. Statement of the Relevant Facts

1. Offense Conduct

From July 11, 2017 to July 13, 2017, Kealoha possessed a Glock 21, .45 caliber handgun, bearing serial number SPS197.

On July 11, 2017, TG was seated in the driver's seat of her 2016 Chrysler 300 (NV #LVD21U) at 7000 Warbonnet Way, Las Vegas, Nevada, when Kealoha approached her with the Glock firearm, pointed the handgun at her, and opened the driver's side door of her vehicle to gain entry. Fearful for her life, TG fled through the passenger side door of the 2016 Chrysler 300, and Kealoha drove away in TG's car.

On July 13, 2017, Kealoha arrived at a gas station located at 9111 South Las Vegas Boulevard, Las Vegas, Nevada, in the above-mentioned stolen 2016 Chrysler 300. At the gas station, Kealoha approached JQM and JQM's 2008 Dodge 1500 (NV#338B29). Kealoha pointed the Glock handgun at JQM and told JQM to run. Fearful for his life, JQM ran away from his car. Kealoha then entered the driver's side of JQM's car with the intention of taking the car. However, the keys to the 2008 Dodge 1500 were not in the car, so Kealoha could not drive off in it. Kealoha then re-entered the stolen 2016 Chrysler 300 and drove away.

On July 13, 2017, Kealoha entered a parking lot located at 2075 East Flamingo Street, Las Vegas, Nevada. Kealoha was driving the above mentioned stolen 2016 Chrysler 300. Inside the parking lot, Kealoha

2

exited the Chrysler 300 and approached KG, who was seated in the driver's seat of her 2013 Chevrolet Cruze (NV #856LKJ). Kealoha opened the driver's side door of the 2013 Chevrolet Cruze, pointed the Glock handgun at KG, and said, "Get the fuck out!" Fearful for her life, KG exited her 2013 Chevrolet Cruze, and Kealoha entered KG's car and drove away.

On July 13, 2017, Kealoha, who was driving the above-mentioned stolen 2013 Chevrolet Cruze, attempted to cause DR, who was driving a 2000 Ford F250 (NV #GRAWP), to pull over. The passenger in DR's truck was her 10-year-old daughter. Kealoha repeatedly slowed down in front of DR's truck, driving erratically to cause her to stop. DR would not stop and instead pulled into a parking lot located at 4505 South Maryland Parkway, Las Vegas, Nevada. She and her daughter remained inside the truck. The windows to DR's truck were tinted. Kealoha then pulled up behind DR's parked truck and began revving his engine, attempting to cause DR to exit the truck so that Kealoha could take the 2000 Ford F250 from DR at gunpoint. When DR refused to exit her truck, Kealoha pointed the Glock pistol at the driver's side of the truck and fired at least 6 shots. DR shielded her daughter with her body while Kealoha was firing into the truck. Bullets entered into the cab of the truck, and one of the bullets barely missed DR's head, and caused a burn to the area near her ear. DR and her 10-year-old child sustained cuts from exploding glass caused by the gunshots. Law enforcement was able to document 6 bullet impact points on DR's truck and recovered .45 caliber shell casings. The casings were later forensically matched to the defendant's Glock 21 handgun. After discharging his firearm, Kealoha drove away from the location in the stolen 2013 Chevrolet Cruze.

On July 13, 2017, Kealoha arrived at a driveway located in Henderson, Nevada in the above-mentioned stolen 2013 Chevrolet Cruze, where he approached GH, who was seated in the driver's seat of an Acura ILX (NV #30G018). Kealoha exited the 2013 Chevrolet Cruze holding the Glock handgun in his hand and ordered GH to get out of his car. Fearful for his life, GH exited his Acura ILX, and Kealoha entered GH's car and drove away. The Acura, however, was a manual transmission, and Kealoha abandoned the car some blocks away.

On July 13, 2017, Kealoha, who was on foot after abandoning the stolen Acura, approached AV, at 3001 West Warm Springs Road, Henderson, Nevada, who was walking to her 2010 Kia Forte (NV #902LFW). As she approached her car, Kealoha grabbed AV's hand that contained her car key, told her to give him the key, and stated, "I don't want to kill you." AV asked Kealoha if she could keep her house key and give him the car key, and Kealoha responded by displaying the Glock firearm. Fearful for her life, AV gave the defendant all her keys. Kealoha then entered AV's 2010 Kia Forte and drove away from the location.

On July 13, 2017, the 2010 Kia Forte (NV #902LFW) was recovered in San Bernardino, CA, where Kealoha was ultimately arrested after committing another carjacking and leading police on a chase. At the time of Kealoha's arrest in California, police recovered the Glock 21 .45 caliber pistol, bearing serial number SPS197, that Kealoha used in the aforementioned carjackings, as well as a backpack with items belonging to TG, the owner of the stolen Chrysler 300. The recovered Glock 21 was later forensically matched to having fired the casings recovered in the attempted carjacking of DR and her daughter.

See Doc. 36 at 7-10.

### 2. Plea Proceeding

On November 29, 2022, a Change of Plea Hearing was held before Judge Andrew P. Gordon. See Doc. 35. Kealoha plead guilty as to Counts 1, 3, 5, 7, 9, and 11 of the Indictment, pursuant to a Binding Plea Agreement Pursuant to Fed. R. Crim. 11(c)(1)(C) ("C-Plea Agreement"). See Doc. 36. In exchange of his guilty plea, the government agreed to: (1) recommend a 3-level reduction for his acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b); (2) dismiss the remaining counts of the Indictment; and (3) not bring any additional charges against Kealoha. *Id.*

### 3. Sentencing Proceeding

On March 23, 2023, a Sentencing Hearing was held before Judge Andrew P. Gordon. See Doc. 42. This Court sentenced Kealoha 60 months per count on counts

4

1, 3, 5, 7, 9, 11, and 13, each to be served concurrent; and 120 months on Count 2 consecutive to the other sentences, for a total term of 180 months' imprisonment. See Docs. 42, 43. It is followed by 5 years' Supervised Release on Count 2 and 3 years on Counts 1, 3, 5, 7, 9, 11, and 13, to run concurrently, for a total term of 5 years of Supervised Release. *Id.* This Court also ordered a payment of a Mandatory Special Assessment Fee of $800. *Id.* No direct appeal was filed in this case.

## ARGUMENT

### A. Standard of Review

In the Ninth Circuit, denials of compassionate release under 18 U.S.C. § 3582(c)(1)(A) are reviewed for abuse of discretion. See *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022); *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021).

In addition, *pro se* litigants are entitled to liberal construction of their pleadings. See *Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir. 2010) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Haines v Kerner*, 404 U.S. 519, 520 (1972) (same).

### B. Discussion

**The District Court Abused Its in Denying Kealoha's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018.**

The District Court in its Order denying Kealoha's First Step Act Motion states as follows:

> Upon motion of the defendant under 18 U.S.C. § 3582(c)(2) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), and having considered such motion, and taking into account the policy statement set forth at USSG §1B1.10 and the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable,

IT IS ORDERED that the motion is: DENIED.

See Doc. 51.

The District Court erred in its Order since Kealoha has "compelling or extraordinary reasons for a sentence reduction," for the following reasons:

1. <u>Requests Based on Non-Medical Circumstances—Incapacitation of the Prisoner's Grandparents</u>

Kealoha respectfully petitions this Court for a Reduction in Sentence ("RIS") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which allows a sentencing court to reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction."

In this case, Kealoha's request is based on the critical and incapacitating medical conditions of his grandparents, for whom he is the only available caregiver. Kealoha's grandfather is 86 years old and suffers from multiple serious and progressive medical conditions, including long-term complications related to Agent Orange exposure. These conditions have significantly impaired his physical functioning, stamina, and ability to manage daily living activities independently. His health has continued to deteriorate with age, rendering him increasingly unable to care for himself or for his spouse.

Kealoha's 85-year-old grandmother is likewise incapacitated. She has been diagnosed with dementia, which has resulted in substantial cognitive decline, memory impairment, confusion, and an inability to safely manage her own care. Her condition requires constant supervision, medication management, and assistance with basic activities of daily living. As her dementia progresses, the risks to her safety and well-being increase significantly without a consistent and reliable caregiver. The family's deteriorating circumstances require urgent attention, and Kealoha is uniquely positioned—and indeed the only family member available—to provide the consistent,

full-time care they require, including attending medical appointments, assisting with daily living, and managing medications.

At present, there is no other family member willing or able to assume responsibility for the care of Kealoha's grandparents. Despite outreach and discussion within the family, no alternative caregiver arrangement has been identified. As a result, the grandparents are effectively without meaningful support, placing them at serious risk of neglect, medical complications, and institutionalization.

Kealoha is the only family member willing to assume responsibility for their care. He has expressed a clear commitment to providing daily assistance, supervision, transportation to medical appointments, medication management, and emotional support necessary for their continued well-being. His involvement would allow his grandparents to remain safely housed and cared for, rather than facing potential placement in assisted living or long-term care facilities.

Courts, particularly within the Ninth Circuit, have recognized family incapacitation as a legitimate basis for compassionate release where the defendant is the only available caregiver. While U.S. Sentencing Guidelines § 1B1.13 and its Application Notes provide a framework that references parental caregiving, courts have emphasized their discretion post-*United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). In *Aruda*, the Ninth Circuit held that the Sentencing Commission's policy statement is not binding on district courts when considering compassionate release motions brought by defendants directly. The Court stated:

> "The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." (*Aruda*, 993 F.3d at 802).

This means the district court may consider a wider range of extraordinary and compelling reasons, including non-parental family caregiving needs, even if not specifically listed in the Sentencing Guidelines. District courts in the Ninth Circuit

7

and beyond have granted RIS based on similar caregiving scenarios:

> In *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), the Ninth Circuit held that when a defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), a district court has discretion to determine whether "extraordinary and compelling reasons" warrant a sentence reduction without being limited to the specific categories listed in the Sentencing Commission's policy statement.
>
> The Ninth Circuit explained that the Sentencing Commission's policy statement (U.S.S.G. § 1B1.13) — which lists examples like medical condition, age, and family circumstances — does not apply to defendant-filed motions, and therefore does not confine the universe of "extraordinary and compelling reasons" district courts may consider.
>
> In *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), the court granted compassionate release to a defendant who was the only available caregiver for his ailing mother.
>
> Similarly, in *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020), the court emphasized that "what constitutes an extraordinary and compelling reason is not limited to those enumerated in the policy statement" and may include family caregiving obligations.
>
> In *United States v. Riley*, No. 19-cr-152, 2020 WL 6368711 (S.D.N.Y. Oct. 29, 2020), the court granted compassionate release to a defendant who was the only available caregiver to his incapacitated grandfather and noted that caregiving burdens could amount to extraordinary and compelling circumstances even if not expressly contemplated under the guidelines.

Given the gravity of his grandparents' conditions—radiation poisoning and dementia—and the absence of any other available caregiver, Kealoha's situation presents an extraordinary and compelling reason for sentence reduction. Releasing him would allow immediate, necessary, and humane care for his elderly family members at a critical juncture in their lives.

8

2. <u>Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct</u>

With respect to the need to avoid unwarranted sentencing disparities, Kealoha urges the Court to consider the *Redd* cases:

- *United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

- *United States v. Brooks*, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020) quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

If Kealoha were sentenced today, after the passage of the First Step Act, there is a reasonable probability that his sentence would be significantly less harsh because his sentence would be disparate relative to Defendant's who were sentenced post-FSA.

As such, the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendants— those being sentenced today under a different sentencing structure and/or received a reduction in sentence based on the need to avoid unwarranted sentencing disparities. Kealoha's sentence in 2023

9

is now disparate relative to Defendant's who were sentenced post-FSA.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

### 3. Kealoha's Remarkable Rehabilitation

Since the beginning of his incarceration, Kealoha has actively and consistently pursued opportunities for self-improvement, reflecting a deep and genuine commitment to rehabilitation. As detailed in Doc. 47, he has completed numerous Bureau of Prisons (BOP) educational and vocational programs, evidencing a pattern of diligence and responsibility. Importantly, Kealoha has maintained a clear disciplinary record for over six months, reinforcing his dedication to positive conduct and institutional compliance.

This pattern of rehabilitation is not new. Prior to the federal offense at issue, Kealoha served a state sentence during which he was granted early release for good behavior and commendable performance as an Inmate Firefighter for two years—a position that demands discipline, physical endurance, and moral resolve. Currently, Kealoha continues to distinguish himself within BOP custody through stable institutional employment as both a mentor in the Challenge Program and a Health Companion, roles that are entrusted only to inmates who demonstrate exceptional conduct and emotional maturity. His supervisors have provided favorable performance reviews, and BOP records corroborate his positive trajectory, devoid of disciplinary infractions.

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce a sentence if, after considering the applicable factors under § 3553(a), it finds that "extraordinary and compelling reasons" warrant such a reduction. As clarified in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), and adopted by the Ninth Circuit in *United*

11

*States v. Aruda*, 993 F.3d 797 (9th Cir. 2021), district courts now have broad discretion to define what qualifies as extraordinary and compelling, and are not bound by the restrictive criteria in U.S.S.G. § 1B1.13, which previously limited eligibility primarily to terminal illness or parental caregiving.

This legal evolution has opened the door to acknowledging post-conviction rehabilitation as a significant and relevant factor in compassionate release decisions. Courts have increasingly recognized that rehabilitation, especially when paired with other compelling circumstances (such as incapacitated family members, as in Kealoha's case), can justify a reduced sentence.

Furthermore, the § 3553(a) sentencing factors strongly support Kealoha's release. A sentence of time served would remain consistent with the statutory objectives of promoting respect for the law, affording adequate deterrence, protecting the public, and providing just punishment. Kealoha has demonstrated clear rehabilitation, poses no threat to society, and stands ready to reintegrate as a productive member of his community.

In this light, Kealoha respectfully urges the Court to find that continued incarceration is no longer necessary to serve the purposes of sentencing. A sentence reduction would not diminish the seriousness of his offense, but would instead reflect the values of fairness, redemption, and individualized justice that underlie both § 3582(c)(1)(A) and the evolving case law.

Accordingly, this motion should be granted.

## CONCLUSION

For the above and foregoing reasons, the district court abused its discretion in denying Kealoha's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. As such, Kealoha should be re-sentenced to time served or any other relief that the Court deems appropriate pursuant to the circumstances in his case.

Respectfully submitted,

Dated: January 12, 2026.

KEVIN MICHAEL KEALOHA
REG. NO. 94532-022
FCI HERLONG
FEDERAL CORR. INSTITUTION
P.O. BOX 800
HERLONG, CA 96113
Appearing *Pro Se*

### CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C), and Ninth Circuit Rule 32-1, I certify that the attached Appellant's Brief is proportionately spaced, has a typeface of 14 points or more, and contains 3,803 words.

Dated: January 12, 2026

KEVIN MICHAEL KEALOHA

### CERTIFICATE OF SERVICE

I certify that, on January 12, 2026, a true and correct copy of the above and foregoing Opening Brief for Petitioner-Appellant has been mailed via U.S. Mail, postage prepaid to Adam McMeen Flake, Assistant U.S. Attorney, USLV - Office of the U.S. Attorney, 501 Las Vegas Boulevard, Suite 1100, Las Vegas, NV 89101.

KEVIN MICHAEL KEALOHA